**KOLLER LAW LLC**
David M. Koller, Esq. (Pa 90119)
Jordan D. Santo, Esq. (Pa 320573)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UCHE ONYEADOR, | : | Civil Action No. |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| INSIGHT PA CYBER CHARTER | : | |
| SCHOOL, | : | |
| 350 Eagleview Boulevard, Suite 350 | : | |
| Exton, PA 19341 | : | |
| **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Uche Onyeador (hereinafter "Plaintiff"), by and through his attorney, Koller Law,

LLC, bring this civil matter against INSIGHT PA Cyber Charter School (hereinafter "Defendant"),

for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the

Pennsylvania Human Relations Act ("PHRA").  In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in West Chester, PA.

3. Upon information and belief, Defendant INSIGHT PA Cyber Charter School is a public

    cyber charter school with a location and corporate headquarters at 350 Eagleview

    Boulevard, Suite 350, Exton, PA 19341.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under Title VII and the PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on October 31, 2025, alleging race discrimination and retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2026-00776 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated March 6, 2026.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is an African American male.

21. In or around August 2018, Defendant hired Plaintiff in the position of Advisor.

22. Plaintiff was well qualified for his position and performed well.

23. In 2021, Defendant promoted Plaintiff to Supervisor of Student Services.

24. Plaintiff was well qualified for his position and performed well.

### PLAINTIFF PARTICIPATED IN AN INVESTIGATION AND REPORTED RACIAL DISCRIMINATION

25. In or around January 2025, Defendant conducted a Human Resources investigation involving Student Services and Academic Affairs.

26. Plaintiff was interviewed as part of the investigation.

27. During his interview, Plaintiff raised concerns to Sarah Ronosky (Caucasian), then Director of Student Services and current interim Chief Academic Officer, and Rosemary Hughes (Caucasian), Director of Academics, that employees in Academic Affairs were making racially insensitive and discriminatory comments directed towards his staff.

28. Plaintiff's entire staff is African American; they reported to Plaintiff that teaching staff, which was primarily Caucasian, treated them disrespectfully, demeaned their roles, and dismissed them as "secretaries" or words to that effect.

29. However, neither Ronosky nor Hughes properly addressed Plaintiff's complaints of discrimination and/or disparate treatment based on race.

## RONOSKY PLACED PLAINTIFF ON AN UNWARRANTED PERFORMANCE IMPROVEMENT PLAN

30. On or about May 6, 2025, Ronosky suddenly placed Plaintiff on a 45-day Performance Improvement Plan ("PIP"), scheduled to end on or about June 19, 2025.

31. Defendant claimed that the PIP resulted from concerns allegedly uncovered during the investigation regarding Plaintiff's "leadership style" and alleged difficulty managing staff during meetings or words to that effect.

32. Defendant further alleged that Plaintiff failed to provide adequate support to staff or words to that effect.

33. However, Defendant did not provide any specific examples to substantiate these claims demonstrating that these claims were nothing more than a pretextual basis to issue this PIP.

34. Prior to being placed on the PIP, Plaintiff had no history of performance issues, no prior warnings, and no indication that his leadership was in question.

35. Based on the foregoing stated reasons and Defendant's inability to corroborate its claims with specific examples, Plaintiff could draw no conclusion other than that Defenadnt issued the PIP in retaliation for Plaintiff's complaint of disparate treatment and/or discrimination based on race.

## RONOSKY DELIBERATELY IGNORED PLAINTIFF DURING A VIRTUAL SUPERVISORY MEETING

36. On or about June 12, 2025, Ronosky deliberately ignored Plaintiff's "raised hand" in a small, virtual supervisory meeting attended by approximately ten (10) staff members.

37. However, Ronsoky acknowledged other staff members when they "raised their hands".

5

38. Upon information and belief, she received a notification that his hand was "raised" by the system and she chose to ignore it.

## RONOSKY INSTRUCTED PLAINTIFF TO REPRIMAND TWO (2) AFRICAN AMERICAN EMPLOYEES

39. On or about June 16, 2025, Ronosky instructed Plaintiff to reprimand Shirena Outlaw (African American) and Kayla (Last Name Unknown at this time) (African American), despite only one of them being Plaintiff's subordinate.

40. Upon information and belief, race motivated Ronosky's instruction.

## RONOSKY REMOVED PLAINTIFF'S JOB DUTIES AND REDISTRIBUTED THEM

41. On or about June 17, 2025, during a Student Services Department meeting, Ronosky informed Plaintiff that there would be "changes in supervision" or words to that effect.

42. Plaintiff reasonably understood to mean that Defendant would be imminently terminating his employment despite his ongoing PIP, as leadership staff, his comparators and his subordinates were in attendance of the meeting.

43. Shortly thereafter, Ronosky shared her screen during a meeting in which she displayed a list of supervisors.

44. Plaintiff's name had been removed and his duties were shown as divided between Ronosky and Brandon Payne (Caucasian), Coordinator of School Counseling Services.

45. Defendant had predetermined the outcome of Plaintiff's PIP and that his termination was forthcoming despite him still having time left to complete his PIP.

## DEFENDANT EXTENDED PLAINTIFF'S PIP

46. On or about June 19, 2025, Defendant extended the PIP until July11, 2025.

47. On or about July 7, 2025, Samantha Trego, Human Resources Director, informed Plaintiff that outside counsel would review the "evidence" from both sides before a decision was made on his employment.

48. In addition, on or about July 10, 2025, Trego informed Plaintiff that she attended a meeting that same day with outside counsel, Eileen Cannistraci (Caucasian), former CEO, Julie Jaszcar (Caucasian), former CAO, Beth Jones (Caucasian), COO, and Ronosky to review the "evidence".

49. This was a sham process designed to conceal the retaliatory and discriminatory motive for terminating Plaintiff following his complaint of racial discrimination of his staff.

## DEFENDANT TERMINATED PLAINTIFF

50. On or about July 17, 2025, Defendant terminated Plaintiff's employment allegedly due to performance deficiencies.

51. In addition, throughout Plaintiff's employment, Defendant terminated multiple African American employees in Plaintiff's department, including, Shalana Coleman, Tia Gaines, Rickeya Jones and Jay Kamau.

52. Defendant discriminated against Plaintiff due to his race and retaliated against him due to his complaint of race discrimination in violation of Title VII and the PHRA.

53. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – RACE DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

54. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

55. Plaintiff is a member of protected classes in that he is African American.

56. Plaintiff was qualified to perform the job for which he was hired.

57. Plaintiff suffered adverse job actions, including, but not limited to termination.

58. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

59. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

60. Defendant discriminated against Plaintiff on the basis of his protected class.

61. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

62. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

63. Defendant's conduct was willful or performed with reckless disregard to his federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – RACE DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

64. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

65. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his protected class (African American).

66. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

67. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

68. Plaintiff engaged in activity protected by Title VII.

69. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

70. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

71. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

72. Plaintiff engaged in activity protected by the PHRA.

73. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

74. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Uche Onyeador, requests that the Court grant him the following relief against Defendant:

(a)    Damages for past and future monetary losses as a result of Defendant's unlawful employment practices;

(b)    Compensatory damages for non-economic harm including, *inter alia*, emotional pain and suffering, mental anguish, and/or harm to reputation;

(c)    Punitive damages;

(d)    Reasonable attorneys' fees;

(e)    Recoverable costs;

(f)    Pre and post judgment interest;

(g)    An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(h)    Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(i)    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## **CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: June 4, 2026          **By:** */s/David M. Koller*
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*